IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JASON D. DARE, | |
| Plaintiff, | Civil No. 13-1636 (JBS/JS) |
| v. | |
| TOWNSHIP OF HAMILTON, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Conrad J. Benedetto, Esq.
Law Offices of Conrad J. Benedetto
1814 East Route 70, Suite 350
Cherry Hill, NJ 08003
    -and-

Raheem S. Watson, Esq.
Watson Duncan LLC
BNY Mellon Center
1735 Market Street, Suite 3750
Philadelphia, PA 19103
    Attorneys for Plaintiff Jason D. Dare

A. Michael Barker, Esq.
Barker, Scott & Gelfand
Linwood Greene
210 New Road, Suite 12
Linwood, NJ 08221
    Attorney for Defendants Township of Hamilton, Police Chief
    Stacy Tappeiner, Sergeant Christopher Gehring, Captain
    Michael Petuskey, Patrol Officer James A. Esposito


**SIMANDLE**, Chief Judge:

## I. Introduction

    This matter comes before the Court upon a motion to dismiss

the Complaint against Defendant Police Chief Stacy Tappeiner

("Chief Tappeiner"). [Docket Item 11.] Because the Defendants previously filed an answer, the Court will construe this motion as a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

The principal issue presented is whether Plaintiff's Complaint alleges sufficient facts to subject Chief Tappeiner to liability under 42 U.S.C. §§ 1983, 1985, and 1986, as well as the New Jersey Civil Rights Act ("NJCRA"), based on violations of the federal and state constitutions. Specifically, Defendant requests that Plaintiff's claims against Chief Tappeiner be dismissed because Plaintiff's Complaint fails to allege any facts to suggest 1) Chief Tappeiner had any personal involvement in the alleged constitutional violations or 2) Chief Tappeiner created a policy or custom that resulted in the alleged violations. Plaintiff has not filed opposition papers to this motion.

For the reasons discussed below, the Court will grant judgment on the pleadings in favor of Defendant Chief Tappeiner.

## II.  Background

Plaintiff, Jason D. Dare, brought this action arising from an incident in which Plaintiff was arrested and charged with Driving While Intoxicated, Refusal to Submit to Chemical Breath Testing, and Careless Driving following an automobile accident involving a deer.

2

The facts set forth here are those alleged in Plaintiff's Complaint which the Court must accept as true for purposes of a Rule 12(b)(c) motion.

Plaintiff is currently and was for all relevant times, a Trooper II of the State of New Jersey Police Department. (Compl. ¶ 2.) Plaintiff is the brother of Patrol Officer Nicholas J. Dare, Sr. a former Patrol Officer of the Township of Hamilton Police Department. (Id. ¶ 3.) Nicholas J. Dare, Sr. is a named party in litigation against Defendant Township of Hamilton concerning harassment, discrimination, and retaliation against Nicholas J. Dare, Sr. in connection with his employment. (Id.)

On or about December 16, 2011, Plaintiff was involved in an accident involving a deer on Route 40 in Hamilton Township. (Id. ¶ 10.) In avoiding the deer, Plaintiff's vehicle made contact with bushes and Plaintiff struck his head. (Id. ¶ 11.) Defendant Officer Esposito responded to the scene of the accident and was advised by Plaintiff that Plaintiff's head was hurting because he struck his head while avoiding the deer. (Id. ¶ 12.) Officer Esposito placed Plaintiff in the back seat of his police car to transport him to his home or the hospital. (Id. ¶ 13.) Officer Esposito then called the Hamilton Township Police Department advising that Plaintiff had been involved in an accident. (Id. ¶ 13.) Soon thereafter, Defendant Sergeant

Gehring, along with Hamilton Township Police Officers Trenton Lee and L. Randolph arrived at the scene of the accident. (Id. ¶ 14.) Officer Esposito advised Officer Randolph that Plaintiff was "Nick's brother," referring to Hamilton Township Police Officer Nicholas J. Dare, Sr. (Id. ¶ 16.)

Upon arrival, Sergeant Gehring spoke with Officer Esposito, then ordered Plaintiff out of the vehicle for field sobriety tests. (Id. ¶ 17.) Officer Lee proceeded to conduct field sobriety tests on Plaintiff. (Id. ¶ 18.) Sergeant Gehring then ordered that Plaintiff be arrested. (Id. ¶ 19.) Plaintiff was handcuffed and returned to the back seat of Officer Esposito's patrol car. (Id.) Plaintiff was arrested for suspected Driving While Intoxicated and taken to the police station for processing. (Id. ¶ 20.) Plaintiff repeatedly told Sergeant Gehring that he hurt his head in the accident and could not understand what was going on at the police station. (Id. ¶ 21.) Nevertheless, Sergeant Gehring charged Plaintiff with Refusal to Submit to Chemical Breath Testing. (Id.) Defendant Captain Petuskey then contacted Municipal Court Judge H. Robert Switzler to request permission to forcibly take blood from Plaintiff at the hospital if he did not consent, but Judge Switzler denied Captain Petuskey's request. (Id. ¶ 22.) Plaintiff was also charged with Careless Driving, despite having no witnesses to Plaintiff's driving prior to the accident with the deer. (Id. ¶

4

23.)  Defendants then transported Plaintiff to the hospital for injuries to his head sustained in the accident.  (Id. ¶ 24.)

As a result of the charges against Plaintiff, Plaintiff's employer, State of New Jersey Colonel/Superintendent Joseph Fuentes immediately suspended Plaintiff's employment without pay and allowances and issued Internal Investigation/Administrative Charges against Plaintiff.  (Id. ¶¶ 25-26.)  After a trial before the Honorable H. Robert Switzler on July 10, 2012, Plaintiff was found not guilty of all charges against him.  (Id. ¶¶ 27-31.)

Plaintiff alleges that as the result of Plaintiff's familial relationship with Nicholas J. Dare, Sr. and the pending employment discrimination, harassment, and retaliation claims between Nicholas J. Dare, Sr. and Defendants, Plaintiff was targeted and retaliated against by Defendants, including on December 16, 2011, resulting in the deprivation of Plaintiff's civil rights under the New Jersey and United States Constitutions.  (Id. ¶ 32.)

Plaintiff filed this civil action in the Superior Court of New Jersey, Law Division, Atlantic County, on February 18, 2013. On March 18, 2013, Defendants removed the action to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1331 on the basis of federal

question jurisdiction.  [Docket Item 1-1.]  Defendants filed an
Answer on March 22, 2013.  [Docket Item 2.]

On August 5, 2013, counsel for Defendants filed the instant
motion to dismiss claims against Chief Tappeiner pursuant to
Federal Rule of Civil Procedure 12(b)(6).  [Docket Item 11-1.]
Specifically, Defendants argue that there is an insufficient
factual basis to assert a claim for Chief Tappeiner's individual
liability because Chief Tappeiner is only mentioned in the
Complaint when named as a Defendant in the "Parties" section.
(Def. Br. [Docket Item 11-1] at 9.)  Further, the Complaint only
contains a single conclusory allegation that "upper management
of the Township of Hamilton Police Department" participated in
the deprivation of Plaintiff's rights.  (Id. at 2.)

III.  Discussion

A.  Rule 12(c) Standard

A defendant may move to dismiss a complaint before or after
filing an answer.  Fed.R.Civ.P. 12(b)(6) and (c); see also
Borough of Sayreville v. Union Carbide Corp., 923 F. Supp. 671,
675-76 (D.N.J. 1996).  A motion to dismiss made after an answer
is filed is a motion for judgment on the pleadings pursuant to
Rule 12(c) of the Federal Rules of Civil Procedure.  Fed.R.Civ.P.
12(h)(2).  Here, Defendants' motion to dismiss Plaintiff's
claims against Chief Tappeiner was filed after the Answer and

shall be construed as a motion for judgment on the pleadings

pursuant to Rule 12(c).

The differences between Rules 12(b)(6) and 12(c) are purely

procedural. _Turbe v. Gov't of the Virgin Islands_, 938 F.2d 427,

428 (3d Cir. 1991). The pleading standards of Rule 12(b)(6) are

applied for both. _Id._ Thus, the Court must "accept all factual

allegations as true" and construe the complaint "in the light

most favorable to the plaintiff." _Phillips v. County of_

_Allegheny_, 515 F.3d 224, 233 (3d Cir. 2008) (quoting _Pinker v._

_Roche Holdings Ltd._, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

In 2007, the Supreme Court abandoned its previous standard

for notice pleading in its decision in _Bell Atlantic Corp. v._

_Twombly_, 550 U.S. 544 (2007). In _Twombly_, the Court explained

that:

> While a complaint attacked by a Rule 12(b)(6) motion to
> dismiss does not need detailed factual allegations, a
> plaintiff's obligation to provide the "grounds" of his
> "entitle[ment] to relief" requires more than label and
> conclusions, and a formulaic recitation of the elements of
> a cause of action will not do. Factual allegations must be
> enough to raise a right to relief above the speculative
> level.

_Twombly_, 550 U.S. at 555 (internal citations omitted). A

complaint need not provide detailed factual allegations, but it

must contain sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face. _Id._ at

570. The Supreme Court elaborated on and clarified the _Twombly_

standard in a subsequent decision, <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). In <u>Iqbal</u>, the Supreme Court stated:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendants liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"
>
> Two working principles underlie our decision in <u>Twombly</u>. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

<u>Iqbal</u>, 556 U.S. at 678 (internal citations omitted).

As such, when a Court is deciding a motion under Rule 12(c), it must look closely at the complaint to determine whether it states a facially plausible claim to relief, composed of factual content and not merely conclusory allegations reflecting the cause of action.

**B.  42 U.S.C. § 1983**

Plaintiff brings claims against Defendants under 42 U.S.C. § 1983.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

liable to the party injured in an action at law, suit in
equity, or other proper proceeding for redress . . . .

42 U.S.C.A. § 1983.  To state a claim for relief under section

1983, a plaintiff must allege: 1) the violation of a right

secured by the Constitution or laws of the United States and 2)

that the alleged deprivation was committed or caused by a person

acting under color of state law.  West v. Atkins, 487 U.S. 42,

48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d

Cir. 1994).  See also Malleus v. George, 641 F.3d 560, 563 (3d

Cir. 2011).

Neither Plaintiff's Complaint nor Defendants' motion

clarifies whether this suit addresses Chief Tappeiner in his

personal or official capacity, or both.[1]  As such, the Court must

first consider the capacity in which Plaintiff directs the

claims against Chief Tappeiner.[2]

The Supreme Court has made clear that official capacity

suits are simply an alternative to "pleading an action against

---

[1] Defendants' motion contains contradictory statements.
Defendants state in the preamble of the motion to dismiss: "This
is an insufficient factual basis to assert a claim for Chief
Tappeiner's individual liability."  (Def. Br. [Docket Item 11-1]
at 2.)  While this appears clear enough, Defendant later
concludes, "[S]ince Plaintiff is suing Chief Tappeiner in his
official capacity as the Hamilton Township's Police Chief, any
claims against Tappeiner are duplicative of Plaintiff's claims
against Hamilton Township itself."  (Id. at 9.)
[2] Plaintiff is apparently indifferent to, or not cognizant of,
this issue.  Not only is the Complaint silent, but Plaintiff's
counsel has not offered any clarification in his opposition
brief, since the motion is unopposed.

an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n.55 1978)). "Suits against state officials in their official capacity therefore should be treated as suits against the State." Hafer v. Melo, 502 U.S. 21, 25 (1991) (citing Graham, 473 U.S. at 166). In contrast, personal capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law." Id. "Thus, '[o]n the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.'" Id. (quoting Graham, 473 U.S. at 166). An official capacity action requires more because a governmental entity is liable under section 1983 only when official policy is "the moving force of the constitutional violation." Polk Cnty. v. Dodson, 454 U.S. 312, 326 (1981) (quoting Monell, 436 U.S. at 694).

Where, as here, the complaint does not explicitly state whether claims are asserted against a defendant in a personal or official capacity, the Third Circuit has instructed courts to examine the complaints and the "course of proceedings." Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990) (citation omitted). Explaining its approach in Melo, the Third Circuit stated:

10

We determined that the plaintiffs meant to sue the official in her personal capacity for two reasons. First, the complaints only listed the official, not the State, as a defendant and thus the plaintiffs manifested that they only sought to recover from the official, not the State. *Melo*, 912 F.2d at 636. Second, the official asserted the qualified immunity defense throughout the course of the proceedings. This defense is only available when government officials are sued in their personal, not official, capacity. <u>Id.</u> We determined that in raising this defense, the official "understood that plaintiffs sought to sue her in her personal capacity." <u>Id.</u>

<u>Garden State Elec. Inspection Servs. Inc. v. Levin</u>, 144 F. App'x 247, 251 (3d Cir. 2005).

In <u>Garden State</u>, the plaintiff brought a section 1983 action against the Commissioner of New Jersey Department of Community Affairs, among others, for failing to enforce provisions of the state construction code. <u>Id.</u> at 249. The Third Circuit distinguished <u>Melo</u> and found that the plaintiff intended to sue the commissioner in an official capacity. <u>Id.</u> at 251-53. First, the court noted that the complaint sought damages from a branch of the state government, not the commissioner. <u>Id.</u> at 251. Second, Plaintiff did not allege "particularized allegations or facts" suggesting that the commissioner had any involvement in the alleged misconduct. <u>Id.</u> at 252. Finally, unlike the defendant in <u>Melo</u>, the commissioner did not raise any personal immunity defenses in the answer to suggest the defendant understood the suit was against her in her personal capacity. <u>Id.</u>

Here, the complaint and course of proceedings do not lead to a clear conclusion.  In some regards, Plaintiff's Complaint suggests that the claims are asserted against Chief Tappeiner in his official capacity.  Plaintiff's Complaint states: "At all times material hereto, Defendants acted through its employees [sic] of the Hamilton Township Police Department, including the above named, within the scope and course of their employment and by color of State law and pursuant to an official custom, policy and/or practice."  (Compl. ¶ 9.)  Additionally, as in Garden State, Plaintiff does not allege "particularized allegations or facts" suggesting Chief Tappeiner's direct involvement in the alleged misconduct.

While the above supports a claim against Chief Tappeiner in his official capacity, the other factors do not weigh in either direction.  First, unlike Melo, the Complaint lists Chief Tappeiner, as well as the Township of Hamilton as Defendants. (Id. ¶ 4-5.)  Second, considering the damages sought by Plaintiff is unhelpful because the Complaint attached to Defendants' Notice of Removal appears to be missing a page pertaining to damages.  Third, Defendants' Answer also fails to provide any guidance as it raises defenses jointly, severally, and in the alternative on behalf of all Defendants including immunity, partial immunity, and qualified immunity, applicable to both personal capacity and official capacity suits.

Because the court is unable to determine based on the Complaint and course of proceedings whether Plaintiff asserts claims against Chief Tappeiner in his personal or official capacity, the court will consider both types of claims for the purposes of this motion.

### 1.  Official Capacity Under Section 1983

As noted above, "[s]uits against state officials in their official capacity . . . should be treated as suits against the State." Hafer v. Melo, 502 U.S. 21, 25 (1991) (citing Graham, 473 U.S. at 166).  An official capacity action requires proof that official policy is "the moving force of the constitutional violation." Polk Cnty. v. Dodson, 454 U.S. 312, 326 (1981) (quoting Monell, 436 U.S. at 694).  Here, Plaintiff does not allege any specific facts to suggest the Chief Tappeiner's personal involvement in the alleged violations.  Nor does Plaintiff provide specific allegations that the purported violations were the result of official policy.  Plaintiff's Complaint only contains a conclusory statement that "there was participation of upper management . . . that evidences the customs, patterns, practices, and procedures of Defendants to retaliate and violate the civil rights of Plaintiff." (Compl. ¶ 40.)

Further, to the extent Plaintiff brings a section 1983 claim against Chief Tappeiner in his official capacity, the

Township of Hamilton may be liable for any misconduct alleged because the municipality is named as a Defendant.  Naming Chief Tappeiner as a defendant in his official capacity "is merely redundant and, given that no particularized allegations implicate [him], improper." Rodriguez v. City of Camden, 09-CV-1909 NLH KMW, 2011 WL 345918, at *5 (D.N.J. Feb. 2, 2011) (citing Dull v. W. Manchester Twp. Police Dep't, CIV.A. 1:07-CV-0307, 2008 WL 717836, at *7 (M.D. Pa. Mar. 17, 2008) ("Claims asserted against both a government entity and the entity's agents in their official capacity warrant dismissal of the redundant official-capacity suits."); Congregation Kol Ami v. Abington Twp., CIV.A. 01-1919, 2004 WL 1837037, at *19 (E.D. Pa. Aug. 17, 2004) ("Because the Township is already a named party, the suit against [defendant] in his official capacity is wholly redundant and the Court will dismiss him as a Defendant."); Satterfield v. Borough of Schuylkill Haven, 12 F. Supp. 2d 423, 432 (E.D. Pa. 1998) ("By bringing official capacity suits against the these three Defendants and against the Borough itself, the Plaintiff has essentially named the Borough as a defendant four times.  Therefore, although we recognize that we are not required to do so . . . we will exercise our discretion and grant the Defendants['] Motion to [D]ismiss the official capacity claims.").  As such, the Court will grant Defendants'

motion for judgment on the pleadings as to claims asserted against Chief Tappeiner in his official capacity.

## 2.  Personal Capacity Under Section 1983

Plaintiff's complaint does not allege any direct involvement by Chief Tappeiner in the events giving rise to the instant action.  Therefore, Plaintiff's claims against Chief Tappeiner must rest on a theory of supervisory liability.

As a general rule, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.  *Ashcroft v. Iqbal*, 556 U.S. at 676; *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983).  In *Iqbal*, the Supreme Court held that "[b]ecause vicarious or supervisor liability is inapplicable to *Bivens* and [section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Thus, each government official is liable only for his or her own conduct.  The Supreme Court rejected the contention that supervisor liability can be imposed where the official had only "knowledge" or "acquiesced" in their subordinates' conduct.  *Id.* at 693.

Under pre-*Iqbal* Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors

15

can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 127 n.5 (3d Cir. 2010) (citation and internal quotations omitted). "Particularly after Iqbal, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue." Id. at 130 (citation and internal quotations omitted.)

The Third Circuit has recognized the potential effect Iqbal might have in altering the standard for supervisory liability in a section 1983 suit but, to date, has declined to decide whether Iqbal requires narrowing the scope of the test. Santiago, 629 F.3d at 130 n.8; Bayer v. Monroe County Children and Youth Servs., 577 F.3d 186, 190 n.5 (3d Cir. 2009) (stating in light of Iqbal, it is uncertain whether proof of personal knowledge, with nothing more, provides sufficient basis to impose liability upon supervisory official). Therefore, it appears that, under a supervisory theory of liability, personal involvement by a

16

defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right.  <u>Williams v. Lackawanna Cnty. Prison</u>, CV-07-1137, 2010 WL 1491132, at *5 (M.D. Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; e.g., supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff.  <u>Sample v. Diecks</u>, 885 F.2d 1099, 1117–18 (3d Cir. 1989); <u>see</u> <u>also</u> <u>Iqbal</u>, 556 U.S. at 676–686.

Here, Plaintiff alleges no facts regarding Chief Tappeiner's personal involvement in the deprivation of Plaintiff's constitutional rights.  Plaintiff's Complaint contains only one paragraph that may implicate Police Chief Tappeiner at all.  This paragraph consists of the bare allegation that "[t]here was participation by upper management of the Township of Hamilton Police Department, under color of State law, in connection with the deprivation of the rights of Plaintiff, that evidences the customs, patterns, practices, and

17

procedures of Defendants to retaliate and violate the civil rights of Plaintiff." (Compl. ¶ 40.) Plaintiff has alleged no facts indicating that Chief Tappeiner directed the deprivation of a plaintiff's constitutional rights or created policies to that effect. Instead, Plaintiff relies on a single paragraph of legal conclusions that only obliquely alludes to "upper management" without even mentioning Chief Tappeiner. Accordingly, this Court will dismiss the claims against Chief Tappeiner under section 1983.

## C. New Jersey Civil Rights Act Claims

The Court will grant Defendants motion for judgment on the pleadings as to claims against Chief Tappeiner under the New Jersey Civil Rights Act (NJCRA) for the same reasons discussed above under section 1983.

The NJCRA creates a private right of action for deprivations of "any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of [New Jersey]." N.J.S.A. § 10:6-2. The NJCRA is substantially similar to the federal civil rights statutes, and "courts have interpreted the statute 'in terms nearly identical to its federal counterpart; Section 1983.'" Baklayan v. Ortiz, CIV.A. 11-03943 CCC, 2012 WL 1150842, at *6 (D.N.J. Apr. 5, 2012)

(quoting Chapman v. New Jersey, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009)).

As under section 1983, liability under the NJCRA is premised on "personal involvement in the alleged misconduct, and neither allow claims premised solely on respondeat superior." Id. (citing Didiano v. Balicki, No. 10-4483, 2011 WL 1466131, at *9 (D.N.J. Apr. 18, 2011). "In order to state . . . a claim against a supervisor for the actions of his or her subordinates under either § 1983 or the NJCRA, a plaintiff must allege that the supervisor was involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged." Gilmore v. Reilly, CIV 09-5956 (DRD), 2010 WL 1462876, at *6 (D.N.J. Apr. 9, 2010). Therefore, Plaintiff's failure to plead sufficient facts regarding Chief Tappeiner under section 1983 supports judgment on the pleadings as to Plaintiff's NJCRA claims against Chief Tappeiner as well.

D.  **Section 1985 and 1986 Claims**

The Court will grant Defendants' motion for judgment on the pleadings as to Plaintiffs' section 1985 and 1986 claims. While Plaintiff's Complaint fails to specify the sub-section of section 1985 upon which Plaintiff's claim against Chief Tappeiner is based, it is clear that Plaintiff's claims will fail under all three sub-sections. Further, because a valid section 1986 claim must be premised on a valid section 1985

19

claim, the Court will also grant Defendants' motion for judgment on the pleadings as to Plaintiff's section 1986 claim against Chief Tappeiner.

42 U.S.C. § 1985 addresses claims for three types of conspiracies. Altieri v. Pennsylvania State Police, 98-CV-5495, 2000 WL 427272 (E.D. Pa. Apr. 20, 2000). Section 1985(1) prohibits "two or more persons" from conspiring to interfere with a federal officer's performance of his duties. Shulman v. Zsak, 485 F. App'x 528, 531 (3d Cir. 2012) cert. denied, 133 S. Ct. 1283 (2013) (citing Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 423 n.1 (3d Cir. 2003)). Section 1985(2) addresses conspiracies to obstruct justice and to intimidate litigants and witnesses. Id. Section 1985(3) creates a cause of action against any two persons who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C.A. § 1985(3). A complaint under section 1985(3) "must allege that the defendants did (1) conspire . . . (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. It must then assert that one or more of the conspirators (3) did, or caused to be done, any act in furtherance of the object of the

20

conspiracy, whereby another was (4a) injured in his person or property or (4b) deprived of having and exercising any right or privilege of a citizen of the United States." Griffin v. Breckenridge, 403 U.S. 88, 102–03 (1971).

Here, Plaintiff has failed to allege with any specificity that the purported constitutional violations resulted from an official policy or custom.[3] While the complaint alludes to the "the participation by upper management of the Township of Hamilton Police Department . . . that evidences the customs, patterns, practices, and procedures of Defendants to retaliate and violate the civil rights of Plaintiff," this vague statement is insufficient to establish liability as to Chief Tappeiner in his official capacity. (Compl. ¶ 40.) Finally, claims against Chief Tappeiner in his personal capacity fail as well because Plaintiff does not allege any facts suggesting Chief Tappeiner's direct involvement in or even knowledge of the purported misconduct of the other Defendants. As such, the allegations in the Complaint fall short of establishing an intentional conspiracy under any sub-section of 1985.

As noted above, Chief Tappeiner is also entitled to judgment on the pleadings as to Plaintiff's section 1986 claim. Under the express terms of the statute, a claim under section

---

[3] Plaintiff has again offered no explanation of his pleadings against Chief Tappeiner and has not opposed this motion.

1986 is entirely dependent on the viability of an underlying section 1985 claim. 42 U.S.C. § 1986 ("Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable . . . .") (emphasis added). Because Plaintiff fails to state a viable section 1985 claim, the Court will grant Defendants' motion for judgment on the pleadings as to Plaintiff's section 1986 claims against Chief Tappeiner as well.

## IV. Conclusion

The Court will grant judgment on the pleadings in favor of Defendant Chief Tappeiner on all claims. Since the dismissal is warranted and the motion was unopposed, the Court concludes that amendment would be futile; Plaintiff had an opportunity to clarify his legal and factual positions in this motion and remained silent. This motion, and the Court's action on it, are not meant as a mere dress rehearsal for some future effort to pursue these claims against Chief Tappeiner. An accompanying Order will be entered.


**November 18, 2013**                              **s/ Jerome B. Simandle**

Date                                               JEROME B. SIMANDLE
                                                   Chief U.S. District Judge


22